STATE ex rel. TOWN COUNCIL OF WADESBORO v. J. A. ATKINSON et al.

*Official Bond—Tax-collector—Charter of a Town—Authority to Collect Taxes—The Code—Estoppel—Levy.*

1. The findings of fact by referee, where there is evidence to support it, is conclusive.

2. A town council levied a tax upon property and polls exceeding the amount allowed in the original charter. An act amendatory thereof gave the town all the privileges and rights allowed to the most favored towns in the State: *Held,* that this amendment would seem to allow the increased taxation, and if not, *The Code,* § 3800, conferring on towns and cities power to lay a tax on real and personal property within the corporation, certainly allows it.

3. Where it appears that taxes were levied, and no insufficiency is shown, they will be presumed regular and sufficient, although no written order of collection is endorsed upon the levy.

4. The tax-collector, having accepted and acted under such levy, cannot be now heard to impeach its sufficiency.

This was a CIVIL ACTION, tried at November Term, 1889, of ANSON Superior Court, before *Shipp, J.*

This action is brought against the defendant Atkinson as late constable of the town of Wadesboro, and the sureties to his official bond, for an alleged breach of the condition thereof, in that he failed to collect and account for cer-

tain taxes due to the plaintiff's relators, as he was charged and bound to do, etc. The pleadings raised certain issues of fact, which were tried by a jury, who rendered their verdict adversely to the defendants. Thereupon, the Court directed a referee to ascertain and state an account of the taxes the defendant constable collected, or ought to have collected, and failed to account for, etc., and to make report of his account, etc., etc. The referee took and stated an account as directed, and made report thereof. The following is so much thereof as it is necessary to report here:

"*Facts.*—I find the facts to be that, on the 1st day of September, 1882, the Town Commissioners of Wadesboro levied a tax of fifty cents on the one hundred dollars valuation of property, and one dollar and fifty cents on each poll. That the same was made out by the defendant, and was taken charge of by him under verbal directions from the Mayor. That there was no written order on said list to collect the taxes therein specified. That the defendant proceeded to collect the taxes on said list, and continued to do so until his term of office expired. That the defendant, as marshal, had special taxes to collect, a statement of which is herewith sent. The taxes amounted to $1,482.24, and that the defendant paid out, or is entitled to credit, for $1,301.21, as per statement of account hereto attached, and that there is a balance due the plaintiff of $181.73, with interest from September 4th, 1883, till paid.

"*Conclusions of law.*—I conclude that it was the duty of the defendant to collect the taxes levied, and that, on the foregoing facts, he had authority to collect the same, and that if he failed to do so, he was liable."

The defendant filed numerous exceptions to the findings of fact, and, also, to the referee's conclusions of law, as follows:

"Defendant excepts to the conclusions of law—

" 1. Because he finds it was the duty of the defendant Atkinson to collect the taxes levied, which is erroneous.

" 2. Because there is error in the finding that he had authority to collect the same.

" 3. Because there is error in the finding that if he failed to do so he is liable.

" 4. Defendants except to any judgment against them, and insist that there should be judgment against the plaintiff for costs."

The Court gave judgment in favor of the relators, and the defendants, having excepted, appealed to this Court.

*Mr. J. A. Lockhart,* for plaintiff.
*Mr. J. G. Shaw,* for defendants.

MERRIMON, C. J.—after stating the facts: The exceptions to findings of fact by the referee approved by the Court, cannot be considered here. The findings of fact were conclusive, as there was no exception upon the ground that there was no evidence to support them. *Cooper* v. *Middleton,* 94 N. C., 86; *Usry* v. *Suit,* 91 N. C., 406; *Wiley* v. *Logan,* 95 N. C., 358.

The defendants contended that the relators had no authority to levy the taxes in question, and, therefore, the defendant constable was not bound to collect the same. It was insisted particularly that the levy exceeded that allowed by the charter of the town of Wadesboro. That town was incorporated by the statute (Acts 1825, ch. 75), and section seven thereof allowed the proper town authorities to "lay and collect such taxes on town property not exceeding ten cents on each hundred dollars," &c., but this limitation was expressly repealed by the subsequent statute (Acts 1879, ch. 155). Moreover, the statute (Acts 1873-'74, ch. 88) amends the charter of this town so as to confer upon it power to tax all property taxed by the State, and section five thereof pro-

vides, "That the powers herein granted shall be in addition
to those already allowed by law, and the said town of Wades-
boro shall have all the privileges and rights allowed to the
most favored town in the State," and section seven provides
that this act and that of which it is amendatory "shall be
liberally construed in favor of the corporate authorities of
said town." This provision is not very definite as to the
increase of the powers of taxation, but it would seem that
part of the purpose of it was to allow the authorities to levy
taxes as any other town might do. But any doubt in this
respect is removed by the statute (*The Code*; § 3800), applica-
ble to "towns and cities" generally, except when their char-
ters otherwise provide, which, in terms, confers upon such
"towns and cities" power to "lay a tax on real and personal
estate within the corporation," and also "on *such polls* as are
taxable by the General Assembly for public purposes," not
oftener than annually. In the absence of power specially
conferred upon the town of Wadesboro to levy taxes for its
purposes on polls, the statutory provision just cited extended
to and embraced it (*The Code*, § 3827). So that the town
authorities had ample power to levy the tax in question.
They did not exceed the limit upon their power prescribed
by the statute (Acts 1881, ch. 116, Schedule B), which pro-
hibited towns and cities from levying a greater tax on real
and personal property than one and one-half *per centum* of
the value thereof.

The relators had power and authority to appoint the
defendant to be town constable, and, as such, it became, and
was, his duty to collect the taxes levied for the town; and it
was the duty of the relators, also, to take from him a proper
bond, conditioned for the faithful discharge of his duties as
constable, and particularly for the faithful collection and
accounting for the taxes he might be charged to collect.
*The Code* §§ 3800, 3808, 3809. Moreover, one condition of
his bond sued upon is, that he "shall faithfully collect,

account for and pay over to the proper officer, all fines, penalties and taxes which [it] shall be his duty to collect as such officer."

But the appellants insist that the tax-list was not duly placed in the constable's hands for collection, not having written on the same an order of collection. Neither the charter of the town, nor the general statute in respect to towns and cities, required that such order should be so endorsed. It is sufficient that the taxes were levied, and that a proper list of the same was made out to charge the tax-payer. It appears the relators made the levy. It must be taken that this levy was regular and sufficient. The contrary is not suggested. The list was made out—the just inference is, made out from the proper *data* for the purpose, by the constable, and he took charge of the same "under verbal directions from the Mayor." It is not suggested that such list is not a true one. The levy gave it life and force, and created the liability of the tax-payer. It had official sanction. The Mayor recognized it, and the constable accepted it as sufficient. It was sufficient, certainly in the absence of objection, and he cannot be heard now to say the contrary. The law charged him to collect the taxes as levied, and the tax-payers to pay the same. The list directed him as to who owed the taxes and the amount due. If the tax-payers had refused to pay the taxes charged, and questioned his authority in any respect, he ·might properly, if there had been need, have obtained other and further evidence of his authority from the town authorities and their records. His authority sprang out of the levy and his official character in connection therewith. He undertook, and purported to, and did exercise his authority, and, as it appears, collected most of the taxes due. Why he did not collect the balance does not appear. The presumption is that he could, and ought to have done so. He shows no legal excuse why he did not.

He cannot be heard to say, nor can his sureties, that the list was not sufficient. So far as appears, it served all the purposes of a regular list—it does not appear, he does not suggest, that a tax-payer refused to pay on account of the tax-list he had, or on any other account. Under the tax levy, and as town constable, he assumed the duty of collecting the taxes levied, and the law charges him with a faithful discharge of that duty, and makes him and his sureties responsible for his default. It would be unreasonable, unjust and monstrous to allow a public officer to escape responsibility because of mere irregularity, of which he had knowledge, without objection, and which was, in part at least, attributable to himself. The law does not tolerate, much less sanction, such subterfuge and evasion.

Judgment affirmed.